# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GLORIA DULTRA, and MARYANNE LASTA, individually and derivatively on behalf of LEDMAN HEALTH CARE, INC., an Illinois Corporation<br><br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>U.S. MEDICAL HOME, INC., MICHAEL KESELICA, and GRACE KULIK,<br><br>　　　　Defendants.<br><br>U.S. MEDICAL HOME, INC. and MICHAEL KESELICA,<br><br>　　　　Third-Party Plaintiffs,<br><br>　　　　v.<br><br>ANDREW E. KOLB, GARY VANEK, and BAZOS, FREEMAN, KRAMER, SCHUSTER, VANEK & KOLB, LLC,<br><br>　　　　Third-Party Defendants. | No. 13 C 07598<br><br>Judge John J. Tharp, Jr. |

## ORDER

For the reasons set forth in the accompanying statement, defendant Michael Keselica's motion for leave to file an answer, affirmative defenses, and counterclaims, ECF No. 109, and motion for leave to file a third-party complaint, ECF No. 111, are denied with prejudice. Judgment having previously been entered in favor of the plaintiffs and against defendant U.S. Medical Home, Inc., on Counts I, II, and III of the Amended Complaint, ECF No. 99, the oral motion of plaintiffs Gloria Dultra, Maryanne Lasta, and Ledman Health Care, Inc. ("Ledman") to dismiss the remaining claims of the Amended Complaint, *see* ECF No. 108, is granted. Civil case terminated.

## STATEMENT

The background of this case has been discussed at length in this Court's prior Orders. *See* Order Den. Remand, ECF No. 29; Order Misc. Relief, ECF No. 98. This Order will only discuss the most recent developments as relevant to the pending motions: in March 2015, the Court

1

granted the plaintiff's motion for default judgment against U.S. Medical Home, Inc. ("U.S. Medical") on Counts I-III of the Amended Complaint, ECF No. 18-9, (fraudulent inducement, breach of contract, and violation of the Illinois Securities Law, respectively) and granted the motion to dismiss U.S. Medical's counterclaim. *See* Order Misc. Relief 4-5. This Court also granted the motion of third-party defendants Bazos, Freeman, Kramer, Schuster, Vanek & Kolb, LLC ("Bazos Firm") and Andrew Kolb to dismiss the third-party complaint and denied defendant Michael Keselica's motion to dismiss and motion for sanctions. *Id.* 4, 5-7. Because defendant Grace Kulik had never been served, the Court dismissed all claims against her without prejudice. *Id.* 2 n.2.

The accompanying default judgment order against U.S. Medical entered judgment on Counts II and III, rescinded the Stock Purchase Agreement ("SPA") between the plaintiffs and U.S. Medical, invalidated any shares U.S. Medical or any transferee therefrom held in Ledman, and returned all parties to the status quo as it was on July 30, 2012. J. Order, ECF No. 99. The only claims remaining following the March 25, 2015 Order are the claims against Keselica for fraudulent inducement and violation of the Illinois Securities Law, and the civil conspiracy claim against both Keselica and U.S. Medical. Having secured rescission of the SPA, however, the plaintiffs have moved to voluntarily dismiss their remaining claims.

Keselica, however, would not go gentle into that good night. Shortly after the Court entered judgment against U.S. Medical (and before the plaintiffs moved to dismiss their remaining claims), Keselica filed his Answer to the Amended Complaint, Affirmative Defenses, and Counterclaims. Answer and Countercl. ("Countercl."), ECF No. 100. He then filed a motion to reconsider the March 25, 2015 Order and filed third-party complaints against Gary Vanek, Kolb, and the Bazos Firm and against U.S. Medical. *See* Misc. Mts., ECF Nos. 103-05. The Court denied the motion to reconsider, struck the third-party complaints without prejudice for failure to seek leave to file,[1] and gave Keselica two weeks to file a motion for leave to file further pleadings. Apr. 16, 2015 Min. Order, ECF No. 108. Keselica filed a motion for leave to file an answer, affirmative defenses, and counterclaims, ECF No. 109, and a motion for leave to file a third-party complaint, ECF No. 111.

## I. Motion for Leave to File Answer and Counterclaims

Although Keselica filed a motion for leave to file an answer, affirmative defenses, and counterclaims, the Court never struck the original answer and counterclaims that he filed on April 1, 2015. The Court, therefore, construes this motion as a motion for leave to file an amended answer and counterclaims.[2] The plaintiffs filed a response in opposition to this motion,

---

[1] On June 18, 2014, this Court directed the parties to refrain from filing any further pleadings—"any complaint, answer, cross-, counter-, or third-party claim, defenses, or any motion seeking to strike or dismiss any claim or defense that has been asserted in this case to date, and any motion seeking sanctions"—due to the deluge of filings that had occurred prior to that date. *See* June 18, 2014 Min. Order, ECF No. 77.

[2] Although the Answer and Counterclaims proposed in the motion to amend are very similar to the Answer and Counterclaims filed in April 2015, they are not identical. *Compare* Countercl., ECF No. 100, *with* Am. Answer and Countercl., ECF No. 109-1.

which the Court construes as a motion to dismiss the counterclaims.[3] *See* Pls.' Resp., ECF No. 114.

Keselica's counterclaims against Dultra, Lasta, and Ledman contain myriad allegations, including injurious falsehoods, civil conspiracy, fraud, abuse of process and misrepresentation of material facts, intentional infliction of emotional distress, intentional interference with business relations and prospective economic advantage, unjust enrichment, conversion, negligence, breach of contract, and *respondeat superior* against Ledman.

The plaintiffs argue that this litigation centers on the SPA, which has been rescinded, and that counterclaims premised upon the SPA are therefore moot. Pls.' Resp. 3. Keselica concedes that the counterclaims are premised upon the SPA: in asserting that his counterclaims are compulsory under Federal Rule of Civil Procedure 13(a), he states, "The basis for Plaintiffs' suit—the rescission of the stock purchase agreement—is logically related to the basis of Keselica's counterclaims—the financial and emotional harm from Plaintiffs' breach of the Stock Purchase and Consulting Agreements . . . ." Countercl. 28. The specific allegations further illustrate their dependence on the SPA: for example, Keselica alleges in Count I that "injurious falsehoods" caused the plaintiffs to "br[each] a perfectly valid contract, seize[ ] the property of [U.S. Medical]"; in Count II that the plaintiffs conspired "to attempt to breach and, in fact, breaching perfectly valid contracts"; in Count VI that plaintiffs "seized upon a false blog about Keselica to . . . unwind the valid agreements in place"; in Counts VII-X[4] that by "seizing [Keselica's] property"—*i.e.* Ledman—plaintiffs have "knowingly obtained, conferred, or retained economic benefits acquired at [Keselica's] expense." Countercl. ¶¶ 51-87.[5] The "perfectly valid contract" to which these claims refers is, in fact, the SPA that has been rescinded by operation of the default judgment against U.S. Medical.

The Court therefore agrees with the plaintiffs that the counterclaims premised on breach of the SPA are moot; the premise that the SPA was a "perfectly valid contract" has been rejected and the contract rescinded. Moreover, even if the SPA had not been rescinded, claims premised

---

[3] On a motion to dismiss, the Court takes the allegations of the complaint (or, in this case, the counterclaim) as true. *See United Cent. Bank v. Davenport Estate LLC*, No. 15-2406, 2016 WL 850973, at *2 (7th Cir. Mar. 4, 2016) (motion to dismiss counterclaim).

[4] The conversion claim in Count VIII, the negligence claim in Count IX, and the breach of contract claim in Count X are nearly identical to the unjust enrichment claim in Count VII. *Compare* Countercl. ¶¶ 76-77 *with* ¶¶ 80-81, 83-84, 86-87.

[5] The allegations in the proposed amended counterclaim further intertwine the counterclaims and the SPA. *See, e.g.*, Am. Answer and Countercl. ¶ 99 (plaintiffs have been unjustly enriched because they "knowingly obtained, conferred, or retained benefits acquired at [Keselica's] expense, including the sale of Ledman"), ¶ 106 (plaintiffs "have failed to compensate Keselica for loss of property, including, but not limted [sic] to, Keselica's ownership of [U.S. Medical] and Ledman stock"), ¶ 110 ("As employees and subsidiary of [U.S. Medical, plaintiffs] owed a duty to Keselica, who at the time . . . was both an officer, investor and shareholder of [U.S. Medical.]"), ¶ 115 (plaintiffs "intentionally breached [the consulting] agreement and, by operation, caused the breach of agreements that Keselica had in place with [U.S. Medical]").

upon the SPA belong to U.S. Medical, not to Keselica as an individual. *See* Countercl. ¶ 57 (Keselica admits that he was not a party to the SPA). The Court has repeatedly informed Keselica that he does not have the right to assert claims on U.S. Medical's behalf. *See, e.g.*, Order Misc. Relief 3.

The plaintiffs also argue that the claims "are baseless on the face of the proposed counterclaim," Pls.' Resp. 2, and the Court agrees with that assessment as well. Keselica appears primarily concerned with what he describes as "false accusations" that have been made in the course of this legal proceeding. He cites "70 paragraphs [of] false accusations of fact" in the Amended Complaint, Countercl. ¶ 47, Ex. 7, and states that this Court "restated the blatantly false grounds for Plainitffs [sic] cause of action, casting criminal and blog material allegations against Defenant [sic] Keselica" and that the Court's March 25, 2015 "Opinion reaffirmed and restated the injurious and false content of the Blog." Mot. Am. Answer and Countercl. ¶ 8. The claims premised upon these alleged "falsehoods"— injurious falsehoods, fraud, abuse of process and misrepresentation of material facts, intentional infliction of emotional distress, and intentional and tortious interference with business relations and prospective economic advantage (Counts I, III-VI)—are based upon statements made during the course of this lawsuit. Illinois law,[6] however, provides an absolute litigation privilege for all "defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." *Mouloki v. Epee*, No. 14 C 5532, 2016 WL 910496, at *3 (N.D. Ill. Mar. 10, 2016) (quoting *Atkinson v. Affronti*, 861 N.E.2d 251, 255 (Ill. App. Ct. 2006)) (emphasis removed) (applying absolute litigation privilege to plaintiff's statement in newspaper). Thus, these alleged falsehoods cannot serve as the basis of a claim.[7]

The counterclaims have additional defects that warrant dismissal: "Injurious falsehoods" is not an independent claim but rather is subsumed within the subsequent claims. The abuse of process claim requires "'some act in the use of legal process not proper in the regular prosecution of the proceedings.'" *Pace v. Timmermann's Ranch & Saddle Shop Inc.*, 795 F.3d 748, 757-58 (7th Cir. 2015) (quoting *Kumar v. Bornstein*, 820 N.E.2d 1167, 1173 (Ill. App. Ct. 2004)). The only improper "act" Keselica alleges is the falsity of the lawsuit. *See* Countercl. ¶¶ 65-66. That he disagrees with the merits of the lawsuit is not an improper act "outside the scope of the process itself," *Kumar*, 820 N.E.2d at 1173, and equally fails to support a claim against the plaintiffs.

---

[6] As noted in this Court's prior Order, none of the parties discuss which state's substantive law governs these claims. The Court, therefore, applies Illinois law. *See* Order Misc. Relief 5 n.7 (quoting *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898 (Ill. 2007) ("A choice-of-law determination is required only when a difference in law will make a difference in the outcome.")).

[7] The absolute litigation privilege does not apply to abuse of process claims but does apply to false light actions. *Mouloki*, 2016 WL 910496, at *3 (citing *Zdeb v. Baxter Int'l, Inc.*, 697 N.E.2d 425, 429-30 (Ill. App. Ct. 1998)). Although Keselica titles this claim "abuse of process," the allegations describe the harm he has suffered from the "false information and facts that cast Keselica in a false light." Countercl. ¶ 67.

4

The fraud, intentional infliction of emotional distress, and intentional and tortious interference with business relations and prospective economic advantage claims are founded upon statements made in a blog "written by a competitor." Countercl. ¶ 30; *see, e.g.*, *id*. ¶ 61 (plaintiffs "falsely asserted the accuracy of a slanderous blog"), ¶ 69 (plaintiffs disseminated false statements "in the hopes that there [sic] appear[ ] on a blog"); ¶ 72 (plaintiffs "seized upon a false blog about Keselica to . . . unwind the valid agreements in place"). That the plaintiffs and/or their counsel believed the contents of a blog does not provide Keselica with a claim against them. *See* Countercl. ¶ 30 ("Kolb googled Defendant Keselica and saw a blog written by a competitor, which contained scandalous, factually incorrect, information. ***Believing the information to be correct*** . . . Kolb stormed into the Ledman offices . . . ." (emphasis added)); ¶ 34 ("Incredibly, ***Kolb believed the blog*** and without further due diligence raided [Ledman] and seized control of the [Ledman] . . ." (emphasis added)).

A fraud claim requires knowledge that the statement at issue was false; Keselica has pleaded the exact opposite, that the plaintiffs believed the information was true. *See Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007) (quoting *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996)). Moreover, Keselica has failed to identify facts to satisfy the remaining elements of common law fraud—the plaintiffs' intent that the false statement induced Keselica to act, Keselica's reliance on the truth of the statement, and Keselica's damages stemming from that reliance. *See Connick*, 675 N.E.2d at 591. As to the intentional infliction of emotional distress claim, Keselica has not alleged that the plaintiffs either intended that their conduct cause Keselica severe emotional distress or that they knew of a high probability of such distress. *See Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003). Rather, he asserts that their motive for the "dissemination of false statements"—the basis of his emotional distress—was to "coverup [sic] for their illegal and criminal conduct." Countercl. ¶ 69. Keselica's assertion of this same motive as the basis for his intentional and tortious interference with business relations claim dooms this claim as well. *See* Countercl. ¶ 72. For a claim of tortious interference, Keselica must demonstrate that the plaintiffs "acted with the purpose of injuring [Keselica's] expectations." *F:A J Kikson v. Underwriters Labs., Inc.*, 492 F.3d 794, 800 (7th Cir. 2007) (internal quotation marks omitted). Instead, he asserts that the plaintiffs acted "to justify their illegal seizure of [Ledman] and to self-rescind or unwind the valid agreements in place." Countercl. ¶ 72. Keselica has failed to state any claim for relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) ("A complaint must allege facts to support a cause of action's basic elements; the plaintiff is required to do at least that much."). Because all of the independent claims fail, the *respondeat superior* claim against Ledman must also be dismissed.

Thus, Keselica's counterclaims both fail to plausibly state any claim and also "relate to the same set of facts and circumstances that give rise to the allegations raised in Plaintiffs' Amended Complaint," Countercl. 43, most of which has been resolved via default judgment against U.S. Medical and the rescission of the SPA. Because Keselica's counterclaims are largely mooted and because he has failed to state a claim as to the remaining Counts, his counterclaims are dismissed with prejudice. His motion for leave to file an amended answer, affirmative defenses, and counterclaims is denied as futile because "the proposed amendment fails to cure the deficiencies in the original pleading." *Arlin-Golf, LLC v. Vill. of Arlington Heights*, 631 F.3d

818, 823 (7th Cir. 2011) (internal quotation marks omitted). The plaintiffs' motion to dismiss is granted.

## II. Motion for Leave to File Third-Party Complaint

Because the motion to dismiss the counterclaims is granted and the plaintiffs' oral motion to dismiss is granted, there are no remaining claims. Keselica's motion for leave to file a third-party complaint is, therefore, denied.

Even if Keselica were permitted to file, the proposed third-party complaint is meritless; it contains the same catalogue of allegations as the counterclaim, this time directed at the plaintiffs' former attorneys. These claims are outside the general contours of Federal Rule of Civil Procedure 14(a), which permits the addition of a "nonparty who is or may be liable to [the defendant] for all or part of the claim against it." Fed. R. Civ. P. 14(a). A third-party complaint "'must be an assertion of the third-party defendant's *derivative* liability to the third-party plaintiff.'" *Ruderman v. Bank of Am., N.A.*, No. 10 C 6153, 2012 WL 4795705, at *1 (N.D. Ill. Oct. 9, 2012) (quoting 3 *Moore's Federal Practice* § 14.04(3)(a) (3d ed. 2011)) (emphasis in original). Keselica's proposed third-party complaint does not allege that the third-party defendants Kolb, Vanek, and the Bazos Firm would be derivatively liable to Keselica if he were found liable to Dultra, Lasta, and Ledman but merely asserts independent claims. *See F.D.I.C. v. OneBeacon Midwest Ins. Co.*, No. 11 C 3972, 2013 WL 951107, at *7 (N.D. Ill. Mar. 12, 2013) (third-party complaint improper where defendant did not allege that third-party defendants were liable to the defendant for the plaintiff's damages).

Dated: March 28, 2016

John J. Tharp, Jr.
United States District Judge